And so we will hear from Bussetto Foods. Good morning, Your Honor. Scott Reddy appearing on behalf of the appellant, Bussetto Foods. In this case, the debtor admittedly embezzled over $70,000 from Bussetto Foods. In order to avoid potential legal consequences to his actions, he agreed to pay that money back. However, within 90 days of paying Bussetto Foods $34,000, he filed a bankruptcy petition, thus forcing Bussetto to return to the estate the $34,000 as a preference payment. That $34,000 was ultimately used to pay priority non-dischargeable tax claims to the bankruptcy case, and unsecured creditors such as Bussetto received no distribution at all. Bussetto then filed an action under Section 523 to determine whether the debt should be discharged or not through the bankruptcy case. The bankruptcy court, however, decided to dismiss the action because it concluded that no debt existed at the time the bankruptcy was filed, because Bussetto had actually paid the $34,000 before the petition was filed. That result is not supported by the statutory language and will permit debtors to improperly manipulate the bankruptcy system, which is exactly what happened in this case. There are at least two independent reasons why the bankruptcy court is wrong, and this court must reverse the case. First, Section 502H provides that a claim arising from the recovery of a preference shall be allowed the same as if the claim had arisen before the filing of the petition. All of the cases that have interpreted that statute in the context of claims that have special characteristics such as this one, in other words, claims where there could be issues with dischargeability, have concluded that the Section 502H claim maintains the same characteristics of the claim that would have existed had the preference payment never been made. And those cases are all cited in the opening brief on pages 12 through 17. Well, but really the BAP talked about all those cases, and the only one which really suggests, based on the statutory language, is Hackney, correct? I don't agree with that, Your Honor. That's one that expressly analyzed an issue pretty much exactly the same as this. But if you look at the First Circuit case, I believe, the Fleet case as well, I believe also came to that same conclusion. But in the First Circuit, did it deal with this kind of a situation, or were they talking about whether it was a secured or unsecured claim? It was somewhat of a different situation. But, again, if you also look at page 14, we cite the In re Bonnet case. And that case was dealing with a creditor who had a claim reinstated as a result of a preference payment, and that was dealing with a non-dischargeability issue. So there's a second case as well cited on page 14 of the brief. And the important thing is there are no cases which say that that's not the case. The only cases that actually have dealt with this issue have all concluded the same. There isn't a case out there that says it doesn't reinstate the claim at all. However, in reading the good judge and reading the BAP, they're really looking at statute H, 502H. And they're saying that a claim arising from the recovery of property, and then they have the three sections of which this is one, shall be determined and shall be allowed under subsection A, B, or C of this section or disallowed the same as if such claim had arisen before the date of the filing of the petition. It doesn't say anything about, and therefore it will be granted the same status, only that the claim will be arising. So if, in fact, then one under 550, which applies to this case, takes away the money, the only thing that gives the money back is 502H, and it doesn't say anything about restoring it to its non-dischargeability. Isn't that what BAP says? That's one thing they say, but it also doesn't say anything to the contrary. It doesn't say what it does, it just says it reinstates the claim. Well, but aren't you really then asking us to, and frankly, we could feel somewhat aligned with your client. They were taken full advantage of, there's no question. The people were paying them off, doesn't seem fair, doesn't seem the way it ought to be. But if we're judges and not congressmen, maybe we ought to just read the statute. And then if Congress doesn't like it, let them change it to what you want it to be. Well, but the statute, again, says it will reinstate the claim. And so you have to look at, well, what was the claim? Is there a difference, is there not, that BAP was drawing between a claim before the bankruptcy and a debt? They're talking about the debt was not restored. The claim was part of the bankruptcy. Well, but if you look at the bankruptcy code, section 101.12 defines debt as liability on a claim. So you have to look at all the definitions in the statute. A debt is a liability on a claim, so if we're talking about a claim, that's a debt. And the debt that was owed, the debt that's reinstated or the claim that's reinstated, whatever you call it, has to take on the same characteristics. It just wouldn't make any sense that Congress would intend this type of result with this statute. If the claim is revived and reinstated, how can it be anything other than what the claim would have been had the payment not been made? And, again, that's just one reason. The second reason that the court was incorrect here was just looking at section or the fact of what a claim is, and a claim includes a contingent right to payment. The fact is that as soon as Mr. Legere filed bankruptcy within that 90-day period of that $34,000 being paid, that created a contingent right to payment, which is a claim. And that contingent right to payment is sufficient to bring a lawsuit. And so there's actually two independent reasons why this lawsuit should go forward, not just 502H, but just if you look at the definitions of what a claim is. A claim includes, again, if you look at section 10112 and 1015, 105 states that a claim includes a contingent right to payment. Well, that preference that was paid back was a contingent right to payment. That existed at the time the bankruptcy was filed. Well, as I understood, what BAP said is that, in fact, there was no claim at the time of the bankruptcy. It had already been paid. The only reason why there ever gets to be a claim or gets to be anything that you can call a claim is because of the ability of the trustee to go back and take the money as a preference. So there wasn't any claim at the time of the bankruptcy, any contingent claim, any kind of claim. The only claim that you have is because the money was taken as a part of the bankruptcy code, and therefore H should apply. Well, that's just dead wrong, because a claim is a contingent right to payment, and the BAP is just dead wrong on that analysis and that discussion. Because, again, and that's addressed in our brief, a claim Well, dead wrong sounds good, but it doesn't say why. It's wrong because the cases say that a claim, a contingent right to payment, is a claim. And if you have Well, what contingent right did they have? They had already been paid. The right was, as soon as they decided to file bankruptcy within that 90-day period, that was a preference. That created a claim. As soon as he made the payment of $34,000 and decided to file bankruptcy within 90 days of that payment, that was a contingent right to payment, because that's all it can be. And, again, the cases that are cited in the brief actually do say that. Because of the sequence of events here, as soon as that bankruptcy was filed, there was a potential that Busetta was going to have to pay that preference payment back. That's a contingent right to payment, that debt that was then sort of created as a result of the sequence of events that took place here. So the BAP did discuss that. Those cases are discussed in our brief. We completely disagree with the BAP's interpretation. There's two independent reasons why this claim existed at the time the bankruptcy was filed. And I'd like to reserve the balance of my time. Thank you. Good morning, Your Honors. Ms. Christine Kelly appearing on behalf of the debtor and appellee, Charles Lejeur. Your Honors, quite simply, we obviously agree with the courts below. We believe that their decision was well-reasoned, interpreting the plain language of the statutes and precluding any sort of recourse by Busetta Foods. It appears that Busetta now is attempting to argue some ambiguity in the statutes, which was not previously raised. Beyond that, they are arguing the same things that have failed below and are nearly nonsensical and circular in reasoning. Well, let me ask you about that nonsensical. I have a case in front of me that's from the Ninth Circuit, N. Ray Virco, 704 Fed 2nd. It seems to me that reading that Ninth Circuit case, even though I may disagree with it, it suggests that the holding that the claim arising from the avoidance is a claim against the debtor, not just a claim against the estate, and that in one instance, the Ninth Circuit refers to the claim as reinstated. That's Virco. So if, in fact, that's the case, and it's a reinstated claim, it's not reinstated just because it's a claim we've given it by taking away the money under the preference, but it's reinstated with all of its previous involvement, if you will. So it's reinstated to one that's nondischargeable. Why is it based, if I look right at Virco and I read it, and that's my precedent, how do I get around that? Assuming in this particular case that that would be true and Busetto's claim would be reinstated or revived. Well, we're not talking about, well, okay, revived, I'll let you go there, yeah. Okay. Again, Busetto is seeking to revive, if you will, a claim against the individual debtor and not the estate. Which is contrary to the statutory law and wording, the plain language of 502H. I don't know whether it's plain language or not, because right now, again, I'm looking at Virco. I can see your argument because of what's said in the language, but if my circuit has already read that language to say something different, than what BAP says it is, how am I going to get there? If I can just have a moment. Because in Virco, the only thing that you can say about Virco, which is a little bit different than our case, is that in Virco, it was a corporate debtor. In our case, it's not a corporate debtor. I believe, Your Honor, the cases that have been cited and relied upon by Busetto and perhaps the case that you're speaking of as well. Well, it's a ninth circuit case. It hits us square on point. That's why I thought you probably would be able to address that. I would not be able to adequately, and I do apologize for that. Let me ask you then about a first circuit case. The first circuit case that we have in front of us, really, which just looms out of us, looks at a 502H issue, and it isn't talking about non-dischargeability, but it's talking about something somewhat similar. It's talking about whether a claim, which is a secured claim, where the money is drawn back on a preference. And the first circuit says that the claim is not now unsecured. The first circuit says the claim is secured, therefore giving it the same status that it had prior to getting there. Now, I, as said counsel, well, that's a different case. We're in non-dischargeability, but the reasoning of the first circuit is that 502H does not make the claim. That it isn't a, I know we call it a 502H claim, because though I wasn't a great bankruptcy lawyer like you two, I flirted with it in Idaho, so I know about it generally. So I guess that's my worry. If it's supposed to go back to what it was originally, how do I get it out of being a non-dischargeable claim? There was nothing to secure. Busetto took no steps whatsoever to pursue or secure or even assert a position against Mr. Lejeur. Well, that's wrong. Not only did they do that, it seemed to me that the facts are that when they started this whole thing, they filed this claim, this adversary proceeding, if you will, while they were even negotiating about what they would do here, because they were afraid the time would run. And so therefore, I don't know if that was the reason, but it was just before the time had run, and therefore they had this fight, and then they all of a sudden came to an agreement, which was we'll file as an unsecured claim, and you won't, and the debtor won't fight against us. Now, nobody suggested that that agreement is somehow binding that they couldn't do anymore, so I don't think I can even look into that. But the bottom line is they filed this, they initiated the adversary proceeding. Why, how do I get around those two cases, which stare me in the face, even if I want to read the statute? I believe that the other cases had preserved their ability to negotiate, their ability to go after the individual debtor. They do that they didn't do. What did they do that Busetto did not do? Well, for instance, in Hackney, they had obtained the other cases involved criminal issues, where they're... This one is not a crime, but it's certainly something that we regard pretty high up. 523 is pretty straight. If it's a fraud, and this was exactly a fraud, an embezzlement, which they were so kind to the debtor, they didn't even put him through the criminal proceedings. They just said pay it off, and then he was paying it off, and then he goes into bankruptcy and gets the chance to get back his money, and he then he objects to them getting their claim. That's the thing that bothers me. Why don't they go down the... I mean, it's the same as crime. They made their choice, to be sure, and gracious or not, it is what it is. The claim was paid. Mr. Lejeur filed bankruptcy for other reasons. His claim was paid with Busetto. However, he had significant debt, had sold his house to pay them off, and it so happens that because of the timing of the filing of the bankruptcy, which had nothing to do with Busetto, they were paid. He needed relief afforded under the bankruptcy code provided to him, and he... You say nothing to do with the timing. It looks awfully suspicious that it did have to do with the timing, because it was within the preference period. It was within the preference period, correct. Again, he was within his rights to be able to file the bankruptcy and get the relief afforded to him under the bankruptcy code. He had significant other debt, both secured in priority and unsecured, and availed himself of the protection of the bankruptcy code. Well, you contend that the 502H doesn't apply when the plaintiff filed its complaint, didn't have a claim, but on the other hand, haven't all of the courts broadly interpreted the word claim in the bankruptcy context? You say there's no claim here. My time is up. Oh, that's okay. This is on my nickel. It's on his nickel. Fair enough. Okay. Go ahead. And this is certainly a key issue in this matter, is whether there was, in fact, a claim or not. It had been paid. It had been satisfied that the trustee-made demand is through no fault, if you will, of Mr. Lezure. And the policy is to also protect the debtor and allow a fresh start. And that was what he sought. Do you maintain that there's some difference between a claim against bankruptcy estate and a debt? The BAP seems to be making that distinction. I believe, yes, quite simply, Your Honor. Again, I think that Busetto is certainly seeking, because of conduct, to recover against Mr. Lezure personally, as opposed to a debt that the estate may owe. Thank you. Case 06168. I'm ready to go. Just real briefly. I'd like to point the Court out to page 21 of the opening brief in the In Re Bonnet case. That's a case that, again, discussed the fact that if a bankruptcy is filed within the preference period, then that potential preference payment is a contingent claim. And the definitions in the code under 10112 and 10115 make it clear that we're dealing with a claim and a debt here. And other than that, I have nothing else to add unless you have any more questions. Thank you. Case 0616857, Busetto Foods v. Lezure, is hereby submitted.
judges: Hug, Smith, Mills